UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---

| | |
|---|---|
| SHIVA STEIN, : | |
| BROOKLYN, NEW YORK 11231, : | |
| : | Civil Action No. _____ |
| Plaintiff, : | |
| : | |
| v. : | **COMPLAINT FOR VIOLATIONS OF** |
| : | **SECTIONS 14(a) AND 20(a) OF THE** |
| LIBERTY PROPERTY TRUST, : | **SECURITIES EXCHANGE ACT OF** |
| 7 St. Paul Street, Suite 820 : | **1934** |
| Baltimore, MD 21202 : | |
| : | **JURY TRIAL DEMANDED** |
| THOMAS C. DELOACH, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| KATHERINE DIETZE, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| ANTONIO FERNANDEZ, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| DANIEL P. GARTON, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| ROBERT G. GIFFORD, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| WILLIAM P. HANKOWSKY, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| DAVID L. LINGERFELT, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |
| : | |
| MARGUERITE NADER, : | |
| 650 East Swedesford Road : | |
| Wayne, Pennsylvania 19087 : | |

| | |
|---|---|
| LAWRENCE D. RAIMAN,<br>650 East Swedesford Road<br>Wayne, Pennsylvania 19087<br><br>-AND-<br><br>FREDRIC J. TOMCZYK,<br>650 East Swedesford Road<br>Wayne, Pennsylvania 19087<br><br>           Defendants.<br>-------------------------------------------------------- | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Liberty Property Trust ("Liberty or the "Company"), and the members Liberty's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Liberty and Prologis, Inc. ("Prologis").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 26, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby a newly created indirect wholly owned subsidiary of Liberty will merge

with and into Liberty, with Liberty continuing as the surviving entity and as an indirect wholly owned subsidiary of Leaf Holdco Property Trust, a Maryland real estate investment trust and current wholly owned subsidiary of Liberty ("New Liberty Holdco"), which will be followed by the merger of New Liberty Holdco with and into Lambda REIT Acquisition LLC ("Prologis Merger Sub"), a wholly owned subsidiary of Prologis, with Prologis Merger Sub continuing as the surviving company (the "Proposed Transaction"). Pursuant to the terms of the Agreement and Plan of Merger, the companies entered into (the "Merger Agreement") each outstanding Liberty common share of beneficial interest will be converted into the right to receive 0.675 of a newly issued share of Prologis common stock (the "Merger Consideration").

3. As discussed below, Defendants have asked Liberty's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and Citigroup Global Markets Inc. ("Citi") in conducting the valuation analyses in support of their fairness opinions. The Registration Statement also omits or misrepresents information regarding the financial analyses conducted by Goldman Sachs and Citi.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Liberty's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant Liberty is incorporated in Maryland, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Liberty in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Liberty common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Thomas C. DeLoach, Jr. has served as a trustee of the Company since May 1999.

11. Individual Defendant Katherine Dietze has served as a trustee of the Company since January 2011.

4

12. Individual Defendant Antonio Fernandez has served as a trustee of the Company since November 2014.

13. Individual Defendant Daniel P. Garton has served as a trustee of the Company since December 2001.

14. Individual Defendant Robert G. Gifford has served as a trustee of the Company since February 2018.

15. Individual Defendant William P. Hankowsky has served as President since March 2002, Chief Executive Officer since January 2003, and Chairman of the Board since June 2003.

16. Individual Defendant David L. Lingerfelt has served as a trustee of the Company since May 1995.

17. Individual Defendant Marguerite Nader has served as a trustee of the Company since June 2017.

18. Individual Defendant Lawrence D. Raiman has served as a trustee of the Company since April 2019.

19. Individual Defendant Fredric J. Tomczyk has served as a trustee of the Company since November 2014.

20. Defendant Liberty is incorporated in Maryland and maintains its principal offices at 650 East Swedesford Road, Suite 400, Wayne, PA 19087. The Company's common stock trades on the New York Stock Exchange under the symbol "LPT."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

23.     Liberty Property Trust is a leader in commercial real estate, serving customers in the United States and United Kingdom, through the development, acquisition, ownership and management of superior logistics, warehouse, manufacturing, and R&D facilities in key markets. Liberty's 112 million square foot operating portfolio provides productive work environments to 1,200 tenants.

24.     On October 27, 2019, the Company and Prologis jointly announced the Proposed Transaction:

> HOUSTON and DALLAS, June 17, 2019 /PRNewswire/ -- SAN FRANCISCO and WAYNE, Pa., Oct. 27, 2019 (GLOBE NEWSWIRE) -- Prologis, Inc. (NYSE: PLD) and Liberty Property Trust (NYSE: LPT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire Liberty in an all-stock transaction, valued at approximately $12.6 billion, including the assumption of debt. The board of directors of Prologis and the board of trustees of Liberty have each unanimously approved the transaction.
>
> "Liberty's logistics assets are highly complementary to our U.S. portfolio and this acquisition increases our holdings and growth potential in several key markets," said Prologis chairman and CEO Hamid R. Moghadam. "The strategic fit between the portfolios allows us to capture immediate cost and long-term revenue synergies."
>
> The transaction deepens Prologis' presence in target markets such as Lehigh Valley, Chicago, Houston, Central PA, New Jersey and Southern California.
>
> The acquisition on an owned and managed basis comprises:
>
> - 107 million square foot logistics operating portfolio; 87 percent overlap with key markets
> - 5.1 million square feet of logistics development in progress
> - 1,684 acres of land for future logistics development with build-out potential of 19.7 million square feet

6

- 4.9 million square foot office operating and development portfolio

Prologis plans to dispose of approximately $3.5 billion of assets on a pro rata share basis. This includes $2.8 billion of non-strategic logistics properties and $700 million of office properties.

"Liberty and Prologis represent two of the finest teams of real estate professionals and two of the finest portfolios of industrial real estate ever assembled," said Bill Hankowsky, Liberty chairman and chief executive officer. "The joining of these two platforms at this moment, when industrial logistics has become so pivotal to the new economy, will further the industry's ability to support the nation's supply chain and enhance value creation for our combined shareholders. It is a testament to Liberty's outstanding teams of professionals, both present and past."

"Liberty's high-quality logistics real estate will strengthen our portfolio as well as our customer roster," said Prologis chief investment officer Eugene F. Reilly. "We are also excited about the caliber of talent at Liberty and expect a number of their employees to join us to help manage the portfolio and execute on capital deployment."

This transaction is anticipated to create immediate cost synergies of approximately $120 million from corporate general and administrative cost savings, operating leverage, lower interest expense and lease adjustments. Initially, this transaction is expected to increase annual core funds from operations* (Core FFO) per share by $0.10-$0.12. Upon stabilization of the acquired development assets, completion of the planned non-strategic asset sales and redeployment of the related proceeds, annual stabilized Core FFO per share is forecasted to increase by an additional $0.04 per share for a total of $0.14-$0.16.

Further, there are future synergies with the potential to generate approximately $60 million in annual savings, including $10 million from revenue synergies and $50 million from incremental development value creation.

"The execution of this transaction is further evidence of the strength of Prologis' balance sheet and will create significant additional capital from the future sale of the non-core assets," said Prologis chief financial officer Thomas S. Olinger. "The combination of these portfolios will drive incremental Core FFO growth and long-term shareholder value."

7

>Under the terms of the agreement, Liberty shareholders will receive 0.675x of a Prologis share for each Liberty share they own. The transaction, which is currently expected to close in the first quarter of 2020, is subject to the approval of Liberty shareholders and other customary closing conditions.
>
>BofA Securities and Morgan Stanley are acting as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Prologis. Goldman Sachs and Citigroup are acting as financial advisors and Morgan, Lewis and Bockius LLP is serving as legal advisor to Liberty.

* * *

25. The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that Liberty's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

26. On November 26, 2019, Liberty and Prologis jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

27.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

28.     For the *Prologis Financial Projections* as provided by Prologis, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Core Funds From Operations ("FFO"), (2) Adjusted EBITDA, and (3) Adjusted Funds from Operation ("AFFO") Excluding Gains, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 89.

29.     For *Liberty on a Standalone Basis*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA, (2) FFO, (3) FFO/Share, (4) AFFO, and (5) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 93.

30.     For *Prologis on a Standalone Basis*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA, (2) FFO, (3) FFO/Share, (4) AFFO, and (5) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 94.

31.     For *Combined Company on a Pro Forma Basis Giving Effect to the Transaction*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting

9

Principles) financial metrics such as (1) Adjusted EBITDA, (2) FFO, (3) FFO/Share, (4) AFFO, and (5) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 94-95.

32. With respect to Goldman Sachs' *Implied Premia and Multiples Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by Goldman Sachs in its analysis.

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analyses for Liberty*, the Registration Statement fails to disclose: (i) earnings and asset assumptions for Liberty based on the Company projections; (ii) the range of terminal values; (iii) basis for applying a EBITDA multiple range of 20.0x to 20.4x to the terminal value; (iv) the basis for selecting the discount rate range from 4.5% to 5.5%; (v) the basis for selecting the perpetuity growth rates ranging from 0.3% to 1.9%; (vi) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (vii) Liberty's net debt and preferred equity and non-controlling interests as of September 30, 2019; (viii) the number of fully diluted outstanding shares of Liberty. Registration Statement at 73-74.

34. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analyses for Prologis*, the Registration Statement fails to disclose: (i) earnings and asset assumptions for Prologis based on its projections; (ii) the range of terminal values; (iii) basis for applying a EBITDA multiple range of 23.0x to 27.0x to the terminal value; (iv) the basis for selecting the discount rate range from 4.5% to 5.5%; (v) the basis for selecting the perpetuity growth rates ranging from 1.0% to 2.4%; (vi) an illustrative terminal value of non-stabilized assets in the

terminal year based on the incremental stabilized net operating income; (vii) Prologis' net debt and preferred equity and non-controlling interests as of September 30, 2019; (viii) the number of fully diluted outstanding shares of Prologis. Registration Statement at 74.

35. With respect to the *Illustrative Implied Premia of Precedent REIT Transactions*, the Registration Statement fails to disclose the multiples and financial metrics for the transactions observed by Goldman Sachs in its analysis. Registration Statement at 76.

36. With respect to Citi's *Discounted Cash Flow Analyses for Liberty*, the Registration Statement fails to disclose: (i) the terminal value; (ii) basis for applying an Adjusted EBITDA multiple range of 18.8x to 22.8x; (iii) the basis for selecting the discount rate range from 5.72% to 6.52%; and (iv) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income. Registration Statement at 81.

37. With respect to Citi's *Discounted Cash Flow Analyses for Prologis*, the Registration Statement fails to disclose: (i) the terminal value; (ii) basis for applying an Adjusted EBITDA multiple range of 21.1x to 26.1x; (iii) the basis for selecting the discount rate range from 6.44% to 7.38%; and (iv) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income. Registration Statement at 81.

38. With respect to Citi's *Combined Company DCF Analysis*, the Registration Statement fails to disclose: (i) the terminal value of the Combined Company; (ii) basis for applying an Adjusted EBITDA multiple range of 22.1x to 26.1x; and (iii) the basis for selecting the discount rate range from 6.44% to 7.38%. Registration Statement at 85.

39. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Liberty within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Liberty, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Liberty, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Liberty, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 27, 2019

**GOLDMAN & MINTON, P.C.**

By: */s/ Thomas J. Minton*
Thomas J. Minton (Bar No. 03370)
3600 Clipper Mill Road, Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Email: tminton@charmcitylegal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com